CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos Holguin (CSB No. 90754)
Peter A. Schey (CSB No. 58232)
256 S. Occidental Blvd.
Los Angeles, CA 90057
Telephone:  (213) 388-8693, ext. 302
Facsimile:  (213) 386-9484
Email: crholguin@centerforhumanrights.org

GIBBS, HOUSTON & PAUW
Robert H. Gibbs (WSBA 5932)
Robert Pauw
1000 Second Ave. Suite 1600
Seattle, WA 98104
Telephone: (206) 224-8790
(*Pro Hac Vice*)

ASIAN LAW CAUCUS
Ivy Lee
720 Market Street
San Francisco, CA 94102
Telephone: (415) 391-1655

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CATHOLIC SOCIAL SERVICES, INC.,— IMMIGRATION PROGRAM, *et al*.,<br><br>     Plaintiffs,<br><br>- vs -<br><br>JANE NAPOLITANO, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY, *et al*.,<br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. Civ S-86-1343-LKK<br><br>NOTICE OF MOTION AND MOTION FOR CLASS-WIDE ENFORCEMENT OF SETTLEMENT; SUPPORTING MEMORANDUM OF POINTS & AUTHORITIES.<br><br><br>Hearing: November 23, 2009.<br>Time: 10:00 a.m.<br>Courtroom 4 |

1

2      To defendants and their attorneys of record:

3      Please take notice that on November 23, 2009, at 10:00 a. m. or as soon

4  thereafter as counsel may be heard, plaintiffs will and do hereby move the Court for

5  an order enforcing the settlement approved in this action on January 23, 2004, and

6  providing as follows:

7  1)    That defendants cease applying 8 C.F.R. § 103.2(b)(13)(i) (2009) to cut off

8         class members' right to appeal administratively from adverse CIS action on

9         legalization applications presented pursuant to the settlement herein;

10 2)    That defendants cease refusing to adjudicate class members' legalization

11        applications on the sole ground that they now live abroad;

12 3)    That defendants identify and re-adjudicate the legalization applications of

13        class members denied class membership, adjudication of their legalization

14        applications, and/or legalization pursuant to 8 C.F.R. § 103.2(b)(13)(i) (2009)

15        or on the grounds that they now live abroad; and

16 4)    That defendants refund filing fees to class members whose legalization

17        applications they have wrongfully deemed abandoned and whom they have

18        wrongfully advised to file superfluous motions to reopen.

19

20

21

22

23

24

25

26

27

28

1

2          This motion is based upon the annexed memorandum of points and

3   authorities, plaintiffs' exhibits file concurrently herewith, and upon all other matters

4   of record.

5   Dated: October 12, 2009.                    CENTER FOR HUMAN RIGHTS AND

6                                               CONSTITUTIONAL LAW
                                                Carlos R. Holguín
7                                               Peter A. Schey

8                                               GIBBS, HOUSTON & PAUW

9                                               Robert H. Gibbs
                                                Robert Pauw
10                                              (*Pro Hac Vice*)

11                                              ASIAN LAW CAUCUS

12                                              Ivy Lee

13

14

15                                              /s/_____
                                                 Carlos Holguín
16

17                                              /s/_____
                                                 Peter A. Schey
18

19                                              *Attorneys for plaintiffs*

20   / / /

21

22

23

24

25

26

27

28

1

2

OUTLINE OF CONTENTS

3

Introduction ............................................................................................. 1

4

Statement of facts .................................................................................... 3

5

6

    A  CIS regularly applies its "abandonment" regulation against class
        members. ................................................................................. 3

7

8

    B  CIS refuses to receive and adjudicate legalization applications
        tendered by class members now living abroad. ..................... 7

9

Argument ................................................................................................ 10

10

I  This Court can and should enjoin class-wide violations of the settlement. ........... 10

11

12

II  The settlement obliges CIS to adjudicate class members' eligibility for
    legalization notwithstanding any purported failure to respond to a
    demand for more evidence. ............................................................. 13

13

14

    A  The former INS had no authority to reject legalization applications
        as abandoned, and CIS has no such authority now. .............. 13

15

16

    B  Deeming class members' legalization applications "abandoned"
        denies them an adjudication of their applications. ................. 15

17

18

    C  Construing the settlement as permitting CIS to declare class
        members' applications abandoned would bring it into conflict
        with the legalization statute itself. ........................................ 17

19

20

    D  The Court should order CIS to identify class members' legalization
        applications it has rejected as abandoned, adjudicate those
        applications on their merits, and refund class members' fees for
        motions to reopen. ................................................................ 18

21

22

23

III  Class members are entitled to the benefits of settlement notwithstanding
    that they may now live abroad. ....................................................... 21

24

25

    A  Defendants' deeming class members living abroad ineligible for
        legalization is nowhere supported by the text of the settlement
        and should accordingly be enjoined. ..................................... 22

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B   8 U.S.C. § 1255a(a)(3)(C) nowise justifies CIS's rejecting legalization applications tendered by class members now living abroad..................................................................................25

IV   Conclusion ....................................................................................28

/ / /

TABLE OF AUTHORITIES

**Cases**

*Airline Stewards v. Trans World Airlines, Inc.*, 713 F.2d 319 (7th Cir. 1983)................................................................................ 11

*Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir. 1998)........................... 20

*Buckhannon Board & Care Home v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598 (2001)....................................... 12

*Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968), *vacated on other grounds*, 417 U.S. 156 (1974) ............................... 20

*Flanegan v. Arizona*, 143 F.3d 540 (9th Cir. 1998) ......................................... 10

*Gutierrez v. Ilchert*, 702 F. Supp. 787 (N.D. Cal. 1988) ....................................... 27

*Hagestad v. Tragesser*, 49 F.3d 1430 (9th Cir. 1995) ........................................ 10

*Hinckley v. Bectel Corp.*, 41 Cal.App.3d 206, 116 Cal.Rptr. 33 (1974) ................ 25

*In re Suchy,* 786 F.2d 900 (9th Cir. 1986)............................................... 10

*Int'l Union of Bricklayers & Allied Craftsman Local No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401 (9th Cir. 1985) ...................................... 11

*Jeff D. v. Andrus*, 899 F.2d 753 (9th Cir. 1989)............................................ 11

*Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989)........................................................................11, 22

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994).................................... 10

*Local No. 93, Int'l Assoc. of Firefighters v. City of Cleveland*, 478 U.S. 501 (1986)........................................................................12, 18

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003).................................................... 20

*Reno v. Catholic Social Servs.*, 509 U.S. 43 (1993) .............................................. 24

*Robinson v. Metro-North Commuter Railroad Co.*, 267 F.3d 147 (2d Cir. 2001), *cert. denied*, 535 U.S. 951 (2002)....................................... 21

*Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378 (1992) ...................11, 12

*Spallone v. United States*, 493 U.S. 265 (1990) ...................................................... 10

*TNT Marketing, Inc. v. Simon*, 796 F.2d 276 (9th Cir. 1986) ................................. 10

*United States v. ITT Continental Baking Co.*, 420 U.S. 223 (1975) ...................... 12

*United States v. Miami*, 664 F.2d 435 (5th Cir. 1981) .............................................. 12

*Walnut Creek Pipe Distrib., Inc. v. Gates Rubber Co. Sales Div.*, 228
   Cal.App.2d 810, 39 Cal.Rptr. 767 (1964) ........................................................... 25

**Statute and Regulations**

8 C.F.R. § 103.2(b)(13) (2009) ................................................................................ *passim*

8 C.F.R. § 103.2(b)(15) (2009) ...................................................................................... 16

8 C.F.R. § 103.3(a)(3) (2009) ......................................................................................... 16

8 C.F.R. § 245a.2(b) (2009) ........................................................................................... 23

8 C.F.R. § 245a.2(n)(4) (2009) ....................................................................................... 16

8 U.S.C. § 1255a ......................................................................................................... 2, 25

8 U.S.C. § 1255a(a)(1)(A) .............................................................................................. 14

8 U.S.C. § 1255a(a)(2)(A) .............................................................................................. 16

8 U.S.C. § 1255a(a)(3)(C) .............................................................................................. 26

8 U.S.C. § 1255a(b)(5) ................................................................................................... 19

8 U.S.C. § 1255a(f)(3) .................................................................................................... 16

8 U.S.C. § 1255a(f)(3)(B) ............................................................................................... 16

8 U.S.C. § 1255a(f)(4) .................................................................................................... 15

8 U.S.C. § 1255a(f)(4)(B) .......................................................................................... 16, 17

8 U.S.C. ¶ 1255a(a)(2) ................................................................................................... 23

Pub.L. 106-553, 114 Stat. 2762 (2000) ........................................................................... 5

Rule 23(b)(2), Fed.R.Civ.Proc. ...................................................................................... 20

Rule 23(e)(1)(A), Fed. R. Civ. Proc. ......................................................................... 12

Rule 23, Fed.R.Civ.Proc. ......................................................................................... 12

**Other Authorities**

56 Fed.Reg. 61201 (December 2, 1991) .................................................... 14

BLACK'S LAW DICTIONARY (2d pocket ed., 2001) ............................................. 15

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR

CLASS-WIDE ENFORCEMENT OF SETTLEMENT

INTRODUCTION

By this motion, plaintiffs seek class-wide enforcement of the settlement herein of claims on behalf of persons whom the former Immigration and Naturalization Service (INS) unlawfully blocked from applying for legalization under the Immigration and Reform and Control Act of 1986, 8 U.S.C. § 1255a.

On January 23, 2004, this Court approved a settlement pursuant to which defendants pledged to adjudicate the legalization applications presented by members of the following two classes:

> (A)  All persons who were otherwise *prima facie* eligible for legalization under § 245A of the INA, and who tendered completed applications for legalization under § 245A of the INA and fees to an INS officer or agent acting on behalf of the INS, including a QDE, during the period from May 5, 1987 to May 4, 1988, and whose applications were rejected for filing because an INS officer or QDE concluded that they had traveled outside the United States after November 6, 1986 without advance parole.

> (B)  All persons who filed for class membership under *Catholic Social Services, Inc. v. Reno*, CIV No. S-86-1343 LKK (E.D. Cal.), and who were otherwise *prima facie* eligible for legalization under § 245A of the INA, who, because an INS officer or QDE concluded that they had traveled outside the United States after November 6, 1986 without advance parole were informed that they were ineligible for legalization, or were refused by the INS or its QDEs legalization forms, and for whom such information, or inability to obtain the required application forms, was a substantial cause of their failure to timely file or complete a written application.

Settlement ¶ 1.

In the course of implementing the settlement, however, defendant U.S. Citizenship and Immigration Services (CIS) has adopted and pursued policies and practices that, as a matter of law, unlawfully deny certain class members the right to an adjudication of their eligibility for legalization. Among these practices are the

following:

First, CIS's policy and practice is to reject class members' legalization applications as "abandoned" it they fail to respond timely and to CIS's satisfaction to "notices of intent to deny" (NOID) or "requests for evidence" (RFE), or if they fail to appear as directed at inflexible interview or biometrics appointments.

In rejecting class members' applications as abandoned, CIS relies exclusively on 8 C.F.R. § 103.2(b)(13)(i) (2009), a regulation that did not exist during the 1987-88 legalization application year and therefore may *not* be applied against class members at all. Settlement ¶ 11 (requiring CIS to adjudicate class members' legalization applications pursuant to the "regulations, and administrative and judicial precedents the INS followed in adjudicating I-687 applications timely filed during the IRCA application period.").

In deeming class members' applications abandoned, CIS effectively "front-desks" them again (repeating the very injury the settlement is supposed to remedy), cuts off their statutory right to administrative appellate review of their substantive eligibility for legalization, and impairs their right to create a full administrative record upon which eventual judicial review will be based.

Second, CIS has adopted a policy and practice to reject legalization applications from class members who left the United States after the former INS unlawfully refused to accept their legalization applications in 1987-88.

Nothing in the text of the settlement supports CIS's view that continuing presence in the United States is a requirement of class membership, nor does anything in the 8 U.S.C. § 1255a demand class members' continuing presence here as a condition of eligibility for legalization.

To the contrary, the fundamental purpose of the settlement is to restore class members to the position they would be in but for the INS's having unlawfully blocked them from receiving an adjudication of their eligibility for legalization

during the 1987-88 application year. Denying the benefits of the settlement to persons who declined to remain here for some 20 years in an uncertain and ill-defined immigration status, or whom defendants themselves have expelled from the United States, violates the plain text of the settlement and compounds past misconduct the settlement is supposed to correct.

Plaintiffs seek an order compelling CIS to desist from further applying these practices and to identify and make whole class members against whom it has previously applied them.

STATEMENT OF FACTS

### A    CIS regularly applies its "abandonment" regulation against class members.

There is no substantial factual dispute that CIS does in fact apply its current abandonment regulation, 8 C.F.R. § 103.2(b)(13)(i) (2009), against class members.

In some cases, CIS has deemed class members' applications abandoned even where they have timely responded to NOIDs, though not to CIS's satisfaction. In others, CIS has failed to properly mail NOIDs or notices to class members, then denied their applications as abandoned when they failed to respond or appear as supposedly directed. In others still, CIS has refused class members' requests for additional time to respond to NOIDs or to re-schedule interviews, and then declared their applications abandoned when they failed to respond or appear by an inflexible deadline, no matter how many times these same individuals have appeared and otherwise prosecuted their legalization applications. The following cases illustrate.

On June 24, 2004, class member Jose Vega timely applied for legalization pursuant to the settlement. Exhibit 1 at 1.

On May 9, 2005, Mr. Vega duly appeared before CIS for interview in connection with his legalization application. *Id*. at 3. On January 29, 2007, CIS allegedly issued Mr. Vega a NOID. *Id*. at 4. Though his mailing address had

remained constant for many years, the uncontroverted evidence showed that neither Mr. Vega nor his attorney ever received the NOID. Exhibits 2, 3.

On or about March 12, 2007, without further warning to Mr. Vega or his counsel, CIS issued a decision declaring Mr. Vega's legalization application abandoned. Exhibit 1. After much boilerplate, the decision tersely gives the following grounds for this result: "As there was no response to the notice of intent [to deny], your Application for Temporary Residence (I-687) under the CSS/Newman Settlement Agreement is denied." *Id*. at 4. [1]

Mr. Vega thereupon sought a ruling from the special masters overseeing the settlement that CIS's applying its abandonment regulation against class members violates the settlement.

On April 19, 2009, Special Master Gail Killefer—defendants' own nominee as special master[2]—held that CIS could *not* apply the abandonment regulation against class members because that regulation did not exist during the 1987-88 application year; she further held that no *other* legal authority authorizes CIS to reject class members' legalization applications as abandoned:

> In its letter brief, the Justice Department asserts that the "abandonment regulation," 8 C.F.R. § 103.2(b)(13), was not mentioned in the NOID or the March 12, 2007 Decision. This regulation which gives USCIS the authority

_____

[1] The CIS's initial denial did not explicitly rely on the abandonment regulation. However, on April 28, 2009, the AAO "rejected" Mr. Vega's appeal on the explicit ground that by failing to respond to the NOID he had "abandoned" his application pursuant to 8 C.F.R. § 103.2(b)(13). Exhibit 4.1.

The AAO therefore made explicit the implicit legal basis for the CIS's denial: *i.e.*, the abandonment regulation.

[2] Pursuant to ¶ 9A of the settlement, defendants and plaintiffs each nominated three persons, with the opposing party selecting one of the three, to serve as special master.

to deny applications for immigration benefits as "abandoned" when an applicant fails to respond to a NOID, did not exist until 1991, three years after the application period for amnesty. *The regulation cannot be the basis for the USCIS's failure to adjudicate Mr. Vega's application.*

... Defendants have not established *any* legal basis for the USCIS March 12, 2007 Decision denying Mr. Vega's application because he did not respond to the NOID.

Exhibit 4 (emphasis supplied).[3]

Similarly, on December 29, 2005, class member Ruben Sandoval applied for legalization pursuant to the settlement. Exhibit 5. On August 28, 2006, CIS issued him a "notice of intent to deny class membership," giving him 30 days "to submit additional written evidence or information to rebut or to explain the discrepancies" in his claim to class membership. Exhibit 6.

On September 28, 2006, Mr. Sandoval responded to the notice via certified mail, return receipt requested. Exhibit 7.

---

[3] On April 6, 2009, plaintiffs wrote to defendants to urge them to cease applying the abandonment regulation against class members in light of Special Master Killefer's decision. In their letter, plaintiffs provided defendants the names of several additional class members whose legalization applications had been deemed abandoned in violation of the settlement and contrary to Special Master Killefer's holding. Exhibit 33.

Undaunted, defendants instead insisted they would continue to apply the abandonment regulation against class members and even moved the special master to reconsider her decision in Mr. Vega's case.

On June 3, 2009, CIS granted Mr. Vega's application for adjustment of status to that of a permanent resident pursuant to § 1104 of the Legal Immigration Family Equity Act, Pub.L. 106-553, 114 Stat. 2762 (2000) ("LIFE Act").

On June 16, 2009, Special Master Killefer "vacated" her decision in Mr. Vega's case, not on the grounds that her original analysis had been incorrect, but because his appeal had become moot.

On December 11, 2006, CIS nevertheless rejected Mr. Sandoval's legalization application pursuant to 8 C.F.R. § 103.2(b)(13) on the ground that a "thorough search of Agency records shows that, as of this date, there has been no response to the Agency's notice." Exhibit 5.

In its denial, CIS advised Mr. Sandoval that his employment authorization was "hereby cancelled," and that its decision "may not be appealed." *Id*. The notice instead advised Mr. Sandoval to "file a motion to reopen, in accordance with 8 C.F.R. 103.5" if he disagreed with CIS's action.

On January 17, 2007, Mr. Sandoval filed a motion to reopen, together with a filing fee of $385.00. Exhibit 8. Despite the passage of over a year and a half, Mr. Sandoval's motion to reopen remains pending, and he has since had to survive as best he can without authorization even to work in the United States.

On December 20, 2005, class member Jose Martinez Campos likewise applied for legalization pursuant to the settlement. Exhibit 9. On April 4, 2006, he appeared as directed for interview on his application. *Id*. At the conclusion of the interview, CIS demanded Mr. Martinez to produce more evidence of his residence in the U.S. *Id*.

On April 10, 2006, Mr. Martinez appeared personally at the CIS's office in Los Angeles, California, to deliver the additional evidence. Exhibit 10. He requested the CIS officer to give him some written acknowledgment of his having presented this evidence. *Id*. She refused. *Id*.

On July 13, 2006, CIS rejected Mr. Martinez's legalization application pursuant to 8 C.F.R. § 103.2(b)(13) on the ground that a "thorough search of Service records shows that, as of this date, there has been no response to Services' request for additional documentation to support your application." Exhibit 9.

CIS informed Mr. Martinez that its decision "may not be appealed," but that he might "file a motion to reopen, in accordance with 8 C.F.R. 103.5" if he

disagreed with CIS's action. *Id*. It further advised Mr. Martinez that his employment authorization was "hereby cancelled." *Id*.

On August 10, 2006, Mr. Martinez filed a motion to reopen. Exhibit 11. In the motion, Mr. Martinez explained that he had timely responded to CIS's demand for more evidence. On December 5, 2006, CIS summarily denied his motion and again advised, "There is no appeal from this decision." Exhibit 12.

On April 4, 2007, Mr. Martinez requested the special masters review CIS's rejecting his legalization application. CIS argued in opposition that the special master lacked jurisdiction to review Mr. Martinez's case because CIS's declaring an application abandoned is "actually an agency decision denying an application for temporary residence under Section 245A of the Immigration and Nationality Act." Exhibit 13.

On April 19, 2009, Special Master Killefer rejected CIS's characterization of its action and sustained Mr. Martinez's claim:

> The Special Master finds that Mr. Martinez did not abandon his application; he provided additional evidence on April 10, 2006, as requested. Mr. Martinez's appeal is granted, the USCIS Notice of Denial of July 13, 2006 is vacated and Mr. Martinez's application is remanded for a consideration on the merits with the additional evidence supplied by Mr. Martinez.

Exhibit 14.

The exhibits filed herewith contain many more examples of CIS's applying the abandonment regulation against class members. *See* Exhibits 15-23.

**B   CIS refuses to receive and adjudicate legalization applications tendered by class members now living abroad.**

The uncontroverted evidence further demonstrates that CIS routinely refuses to accept and adjudicate legalization applications from class members who left the United States after the INS front-desked them during the 1987-88 legalization application year and now reside abroad.

The reasons class members now reside abroad are varied. In some cases, such class members—who would long ago have become lawful residents but for defendants' misconduct—have decided they would rather not live in the United States in an uncertain immigration status; in others, defendants themselves have forced such class members to depart and then barred them from re-entering the country. Among these class members is Mario de la Cruz.

Mr. de la Cruz entered the United States in 1979 and resided here continuously until 2000. In August 1992, he was granted work authorization and a stay of deportation pursuant to the interim relief order issued in this action; that relief was renewed yearly until 2000, when he went to an INS office in Spokane, Washington, to inquire about the status of his employment authorization. Exhibit 24 at 3.

The INS then arrested Mr. de la Cruz, and despite knowing he had "filed under CSS," persuaded him to leave the country under an order of voluntary departure. Exhibit 25.

Mr. de la Cruz perforce applied from abroad for legalization under the settlement. Exhibit 26. On February 15, 2007, CIS issued a decision refusing to accept or adjudicate Mr. de la Cruz's legalization application on the sole ground that he was no longer in the United States:

> [T]here are no provisions in the statutes, regulations or in the CSS/Newman settlement agreement that provide for the filing of an I-687 application from abroad. Therefore, your application filed pursuant to the terms of the CSS/Newman settlement agreements is hereby rejected. No further action is contemplated on your application now or in the future. There is no appeal to this decision.

*Id*.

In March 2007, Mr. de la Cruz asked the special masters to review CIS's action in his case. Exhibit 27. Special Master Killefer disapproved CIS's policy to

reject legalization applications from class members now residing abroad:

> The language of the Settlement Agreement refers to "[a]ll persons who filed for class membership" (emphasis added) and *does not distinguish between persons who are currently in the United States and those who are currently outside the United States*. Accordingly, Mr. de la Cruz-Reynaga is entitled to relief pursuant to the Agreement. ....

*Id*. (emphasis added).

Class member Stanley Samaratunga resided continuously in the United States from April 1980 until December 2001, when he returned to Sri Lanka. Exhibit 28 at 1. In December 2005, he applied for legalization under the settlement of this action. *Id*.

On August 18, 2006, CIS directed Mr. Samaratunga to appear for an interview on his legalization application in New York on September 11, 2006. Exhibit 29 at 1. On September 4, 2006, Mr. Samaratunga notified CIS that he was outside the country and would not able to appear at the interview in New York unless CIS issued him permission to enter the United States. *Id*. at 2. CIS never granted him such permission.

On October 14, 2006, Mr. Samaratunga's counsel wrote CIS to advise that Mr. Samaratunga "is temporarily in Sri Lanka and is therefore unable to attend an interview scheduled in New York unless he is granted advance parole status. Exhibit 30. Counsel urged CIS to adjudicate Mr. Samaratunga's legalization application "upon the existing record before you," and that if an interview were indispensable, it should "permit Mr. Samaratunga to come to the United States ... or interview[] [him] in Sri Lanka at the U.S. Consulate." *Id*.

Ignoring these entreaties, on February 6, 2007, CIS issued a notice rejecting Mr. Samaratunga's legalization application. It advised, "Any pending applications related to this Form I-687 and Class Membership Application will be administratively closed and receive no further consideration." Exhibit 31.

Again, these cases are representative of standard CIS policy and practice. *See e.g.*, Exhibit 32.[4]

ARGUMENT

I   THIS COURT CAN AND SHOULD ENJOIN CLASS-WIDE VIOLATIONS OF THE SETTLEMENT.

Insofar as jurisdiction to enforce is concerned, the settlement provides as follows:

> Continuing Jurisdiction. The parties agree that notwithstanding the filing and granting of any motion pursuant to ¶ 17, the district court will retain jurisdiction in this action over only the matters described immediately below.
>
> A.   Claims by plaintiffs that the Defendants have engaged in a pattern and practice of refusing to implement any of the relief set forth in this Agreement.

Settlement ¶ 18.[5]

_____

[4] On April 6, 2009, counsel for plaintiffs and defendants conferred telephonically in an effort to resolve their disagreements. Defendants defended their right to pursue the policies and practices described in the text and declined to remedy any of the violations complained of herein.

[5] It was formerly held that a federal court also has "inherent power to enforce the agreement in settlement of litigation before it." *TNT Marketing, Inc. v. Simon*, 796 F.2d 276, 278 (9th Cir. 1986); *see also In re Suchy,* 786 F.2d 900, 902-03 (9th Cir. 1986); *Spallone v. United States*, 493 U.S. 265, 276 (1990).

In *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994), however, the Supreme Court held that a proceeding to enforce a settlement requires its own basis of jurisdiction. *Id.* at 378; *see also Hagestad v. Tragesser*, 49 F.3d 1430, 1433 (9th Cir. 1995). "Such a basis for jurisdiction may be furnished by separate provision (such as a provision retaining jurisdiction over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Flanegan v. Arizona*, 143 F.3d 540, 544 (9th Cir. 1998), *quoting Kokkonen, supra*, at 381. Here, the settlement explicitly recognizes this Court's jurisdiction and is incorporated into

A settlement is both a contract between parties and an order of the court. *See Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378 (1992). A settlement is construed in accordance with the rules apposite to interpretation of contracts. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989).

As a general rule, "the construction and enforcement of settlement agreements are governed by principles of local law. . . ." *Airline Stewards v. Trans World Airlines, Inc.*, 713 F.2d 319, 321 (7th Cir. 1983) (citation omitted). With limited exceptions, however, "federal law controls the interpretation of a contract entered pursuant to federal law when the United States is a party." *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989).

Here, the United States is a party to the settlement which resolves disputes over federal law. Where state and federal law differ, federal law accordingly provides the rule of decision.

Both state and federal law agree, however, that a "written contract must be read as a whole and every part interpreted with reference to the whole." *Kennewick Irrigation District, supra*, 880 F.2d at 1032 (citing *Shakey's Inc. v. Covalt*, 704 F.2d 426, 434 (9th Cir. 1983)). "Preference must be given to reasonable interpretations as opposed to those that are unreasonable, or that would make the contract illusory." *Id*.

Additional principles guiding interpretation and enforcement of the settlement flow from its character as a consent decree.

The instant settlement, of course, was entered in a certified class action. Under Rule 23, Fed.R.Civ.Proc., the Court examined the settlement and formally approved the agreement as consistent with law and the public interest. Rule

---

the  Court's order approving the settlement pursuant to Rule 23, Fed.R.Civ.Proc. Settlement ¶ 18.

23(e)(1)(A), Fed. R. Civ. Proc. ("The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class."). And, as has been seen, the settlement stipulates that this Court shall retain jurisdiction to remedy breaches of the agreement. Settlement ¶ 18.

A settlement with these characteristics is legally equivalent to a consent decree. *See Buckhannon Board & Care Home v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598, 604 n.7 (2001) ("judicial approval and oversight involved in consent decrees" distinguish them from private settlements); *see also Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 378 (1992) (consent decree "embodies an agreement of the parties and thus in some respects is contractual in nature. But it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees."); *United States v. Miami*, 664 F.2d 435, 439-40 (5th Cir. 1981) (en banc) (Rubin, J., joined by Brown, Anderson, Randall, and Thomas A. Clark, JJ, concurring) ("A consent decree, although founded on the agreement of the parties, is a judgment…. As a judgment, it may be enforced by judicial sanctions, including citation for contempt if it is violated.").

Courts have repeatedly held that because they are entered and enforced as judicial orders, consent decrees should not be interpreted to conflict with the statutes they vindicate. *See, e.g., Local No. 93, Int'l Assoc. of Firefighters v. City of Cleveland*, 478 U.S. 501, 526 (1986) (parties to settlement may not "agree to take action that conflicts with or violates the statute upon which the complaint was based"). As Judge Rubin observed in *United States v. Miami*, *supra*,

> Because the consent decree does not merely validate a compromise but, by
> virtue of its injunctive provisions, reaches into the future and has
> continuing effect, its terms require more careful scrutiny. Even when it affects only the
> parties, the court should, therefore, examine it carefully to ascertain not only
> that it is a fair settlement but also that *it does not put the court's sanction on*

> *and power behind a decree that violates Constitution, statute, or jurisprudence.*

664 F.2d at 441 (Rubin, J., concurring; emphasis supplied).

Applying these principles to the case at bar, it will be seen that defendants are manifestly in breach of the settlement; the Court should therefore enter orders "commanding or enjoining [the challenged] conduct." *TNT Marketing*, *supra*, 796 F.2d at 278.

II   THE SETTLEMENT OBLIGES CIS TO ADJUDICATE CLASS MEMBERS' ELIGIBILITY FOR LEGALIZATION NOTWITHSTANDING ANY PURPORTED FAILURE TO RESPOND TO A DEMAND FOR MORE EVIDENCE.

**A   The former INS had no authority to reject legalization applications as abandoned, and CIS has no such authority now.**

Paragraph 11 of the Settlement provides:

> The Defendants shall *adjudicate* each application for temporary residence filed on Form I-687 in accordance with the provisions of § 245A of the Immigration and Nationality Act, 8 U.S.C. § 1255a, regulations, and administrative and judicial precedents *the INS followed in adjudicating I-687 applications timely filed during the IRCA application period*.

(Emphasis supplied).

CIS's policy and practice to deem class members' legalization applications abandoned violates both the settlement's requirements that the agency actually adjudicate their eligibility for legalization *and* that such adjudication take place pursuant to the standards the INS applied during the 1987-88 legalization application year.

First, under *current* regulations CIS has the authority to reject an application for immigration benefits as "abandoned" when an applicant fails to respond to a NOID. *See* 8 C.F.R. § 103.2(b)(13) (2009) ("If the petitioner or applicant fails to respond to a request for evidence or to a notice of intent to deny by the required

date, the application or petition may be summarily denied as abandoned, denied based on the record, or denied for both reasons.").

However, this regulation *did not exist* until 1991, over three years *after* the legalization program had closed. *See* 56 Fed.Reg. 61201 (December 2, 1991). In adjudicating class members' legalization applications, therefore, the settlement bars CIS from applying § 103.2(b)(13).[6]

Nor in its many decisions refusing to adjudicate class members' legalization applications as abandoned, has CIS ever cited any authority other than § 103.2(b)(13) to declare a class member's legalization application abandoned. *See, e.g.*, Exhibit 15. Plaintiffs know of no such authority now existing, much less anything available to the former INS in 1987-88.

_____

[6] Even had the former INS had a general abandonment regulation during the 1987-88 legalization application year, it is unclear whether that regulation could or would have been applied to legalization applications.

First, the current abandonment regulation declares, "[D]enial due to abandonment does not preclude the filing of a new application or petition with a new fee."

Unlike applicants for other immigration benefits, class members herein—just as legalization applicants generally—are uniquely required to apply by strict deadlines. Settlement ¶ 4 (allowing class members one year to file for legalization); 8 U.S.C. § 1255a(a)(1)(A) (same).

Thus, once the application deadline has passed, CIS's deeming a legalization application abandoned—which the agency typically does many months after the application is first filed—results in a *permanent* loss of eligibility, something the abandonment regulation itself assumes will not occur.

Second, as discussed post, CIS's applying the abandonment regulation against legalization applicants would impermissibly cut off their statutory right to administrative review of denials of their applications.

In short, it does not appear that CIS's current abandonment regulation would apply to legalization applications, even had it existed in 1987-88.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B     Deeming class members' legalization applications "abandoned" denies them an adjudication of their applications.**

CIS's deeming a class members' legalization applications abandoned further violates the settlement by denying them an actual adjudication of their eligibility for legalization, a fundamental guarantee of the settlement.

As has been seen, the settlement places CIS under an obligation to "adjudicate" class members' legalization applications. An "adjudication" is defined as "the process of judicially *deciding* a case; ..." BLACK'S LAW DICTIONARY (2d pocket ed., 2001) (emphasis added).

It is clear from the face of the CIS's many decisions declaring class members' applications abandoned that the agency does not thereby purport to decide whether the applicant is or is not eligible for legalization. *See, e.g.*, Exhibit 23.1 ("To date, there has been no response to our [NOID]. ... Pursuant to Title 8, Code of Federal regulations, Part 103.2, your Application ... is hereby denied.").

That CIS does not actually adjudicate abandoned applications becomes further apparent from the structure and operation of the statutory and regulatory provisions on administrative and judicial review of decisions denying legalization.

Pursuant to 8 U.S.C. § 1255a(f)(4), a class member may not obtain *judicial* review of a legalization denial until *after* (1) an immigration judge orders him or her removed, (2) the Board of Immigration Appeals affirms the removal order, and (3) the applicant petitions a federal circuit court of appeals for review. If and when such judicial review occurs, it must be based "solely upon the administrative record..." generated before CIS and its Administrative Appeals Office (AAO). 8 U.S.C. § 1255a(f)(4)(B).

Because they enjoy only this narrowly constrained access to judicial review, Congress directed defendants to afford legalization applicants the right to appeal *administratively* from the denial of their applications. 8 U.S.C. § 1255a(f)(3).

- 15 -

When CIS denies a legalization application on its *merits*, the applicant is, of course, entitled to appeal to the AAO. 8 C.F.R. § 103.3(a)(3) (2009).

Pursuant to 8 U.S.C. § 1255a(f)(3)(B) and 8 C.F.R. § 103.3(a)(3) (2009), such administrative appeals may be "accompanied by any additional new evidence" as the applicant may choose to offer.[7]

While his or her appeal is pending before the AAO, a class member whose application CIS denies on the merits is entitled to continued employment authorization. 8 C.F.R. § 245a.2(n)(4) (2009).

A class member whose application CIS deems abandoned, in contrast, enjoys none these rights: 8 C.F.R. § 103.2(b)(15) (2009) declares unequivocally that "[a] denial due to abandonment may *not* be appealed [administratively]…" (emphasis added).

Implicit in CIS's regulation, then, is that an abandoned application has not been adjudicated at all, and there is accordingly no substantive decision for the AAO to review. *Cf.*, *Id*. ("[D]enial due to abandonment does not preclude the filing of a new application or petition with a new fee. ... [D]enial due to abandonment shall not itself affect the new proceeding...").

Were a finding of abandonment equivalent to an adjudication of a legalization application, aggrieved class members would have statutory and regulatory rights (1) to administrative review of such decisions, (2) to supplement their evidence of eligibility, and (3) to work authorization while their cases are before the AAO. That class members whose applications CIS declares abandoned

---

[7] By far and away the most frequent reason CIS denies legalization is because the applicant has purportedly failed to prove by a preponderance of the evidence that he or she resided continuously in the United States from before 1982 until the date between May 1987 and May 1988 when he or she presented the INS an application for legalization. *See* 8 U.S.C. § 1255a(a)(2)(A).

enjoy none of these rights places into stark relief the qualitative difference between a declaration of abandonment and a true adjudication of their applications.

### C    Construing the settlement as permitting CIS to declare class members' applications abandoned would bring it into conflict with the legalization statute itself.

Finally, interpreting the settlement as permitting CIS to cut off class members' right to administrative review—which, after all, is the only practical import of declaring a legalization applications abandoned—would needlessly bring the agreement into conflict with the legalization statute itself.

As has been seen, 8 U.S.C. § 1255a(f)(4)(B) vests unsuccessful legalization applicants with the right to appeal administratively from a denial of their applications. The whole purpose of CIS's declaring class members' applications abandoned is to strip them of their right to administrative review, and were the settlement to authorize CIS to declare applications abandoned it would manifestly conflict with § 1255a(f)(4)(B).

Of course, nothing in the settlement actually requires any such conflict, and it is axiomatic that a settlement should not be construed so as to violate the very statute it purports to vindicate. *Local No. 93, Int'l Assoc. of Firefighters v. City of Cleveland*, *supra*, 478 U.S. at 526. Condoning CIS's applying of the abandonment regulation against class members would do exactly that, allowing CIS an end-run around the administrative review provisions of § 1255a(f)(4)(B) itself.

\* \* \* \* \*

In sum, the former INS had  no legal authority to declare class members' legalization applications abandoned, and CIS has no such authority now.

Further, in deeming an application abandoned, CIS does not determine that a class member is actually ineligible for legalization. Rather, it *refuses to decide the merits* of abandoned applications and accordingly fails to discharge its duty under

the settlement to *adjudicate* class members' eligibility for legalization.

Finally, condoning CIS's applying the abandonment regulation against class members would bring the settlement into conflict with § 1255a(f)(4)(B), which guarantees unsuccessful legalization applicants the right to administrative review.

In the event a class member fails to respond to a NOID or RFE, CIS should proceed to adjudicate his or her application based on the available evidence and, should the agency deem that evidence insufficient, leave class members to appeal administratively.

> **D**     **The Court should order CIS to identify class members' legalization applications it has rejected as abandoned, adjudicate those applications on their merits, and refund class members' fees for motions to reopen.**

As has been seen, CIS regularly advises class members whose legalization applications it unlawfully declares abandoned that "[t]here is no [administrative] appeal from this decision," and that their sole recourse is to file motions to "reopen" pursuant to 8 C.F.R. § 103.5. *E.g.*, Exhibit 23.1.[8] CIS then routinely extracts a "nonrefundable" filing fee of $385.00 from class members it thus misleads into filing motions to reopen. *Id*.

This Court should accordingly issue declaratory and injunctive relief (1) compelling CIS to identify and re-decide all legalization applications it has denied as abandoned, and (2) enjoining the agency prospectively against declaring any more class members' legalization applications abandoned.

That defendants' challenged practice irreparably injures aggrieved class

---

[8] CIS's abandonment notices also typically omit to advise class members that they may seek special master review of its having deemed their legalization applications abandoned. *E.g.*, Exhibit 23.1. Thus, CIS has led aggrieved class members to believe that their *only* recourse to accepting a declaration of abandonment is a costly and rarely successful motion to reopen.

members cannot be gainsaid. Class members whose legalization applications CIS rejects as abandoned are —

(1)     stripped of their right to a decision on the merits of their eligibility for legalization;

(2)     denied their statutory right to appeal administratively from such denial;

(3)     impaired in developing the administrative record to which future judicial review will be limited;

(4)     summarily reduced to joblessness; and

(5)     consigned to the undocumented underground for howsoever long it takes immigration authorities to discover them, place them in removal proceedings, and secure administratively final removal orders against them.[9]

In short, for aggrieved class members CIS's policy effectively sounds the death knell of their nearly 20-year effort to secure the immigration benefit they would have received in 1987-88 but for the INS's admitted misconduct. Injunctive and declaratory relief should issue to save class members from such irreparable injury.

Plaintiffs further request an order requiring CIS to refund filing fees class members have paid to file motions to reopen legalization applications the agency has wrongfully declared abandoned. This Court has the authority to order such restitution, and it should exercise that authority in favor of aggrieved class members.

This Court long ago certified this action for class treatment pursuant Rule

---

[9] Class members have already spent some 20 years in a legal limbo, and 8 U.S.C. § 1255a(b)(5) bars defendants from using information contained in legalization applications to initiate removal proceedings against them. Defendants' denying class members administrative review thus translates into a virtual life sentence as an undocumented alien.

23(b)(2), Fed.R.Civ.Proc., and the settlement itself protects all members of a modified version of that (b)(2) class. Settlement ¶ 1.

A Rule 23(b)(2) class is appropriate where "[1] the party opposing the class has acted on grounds generally applicable to the class, [2] thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Rule 23(b)(2), therefore, does not cover cases where the primary claim is for damages. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 564 (2d Cir. 1968), *vacated on other grounds*, 417 U.S. 156 (1974).[10] Where money damages is not the predominant form of relief sought, however, restitution may be granted in a Rule 23(b)(2) class action. *Molski v. Gleich*, 318 F.3d 937, 949-50 (9th Cir. 2003).

Predominance is determined by examining "the specific facts and circumstances of each case." *Id*. at 95. "In order to determine predominance, [courts] have focused on the language of Rule 23(b)(2) and the intent of the plaintiffs in bringing the suit." *Id*. Where (1) "'reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought' even were monetary relief unavailable; and (2) "'the injunctive or declaratory relief sought is both reasonably necessary and appropriate,'" a court may award restitution to members of a (b)(2) class. *Id., quoting Robinson v. Metro-North Commuter Railroad Co.*, 267 F.3d 147, 163-64 (2d Cir. 2001), *cert. denied*, 535 U.S. 951 (2002). This is precisely such a case.

First, there can be no doubt that plaintiffs' intent in bringing this motion is to obtain declaratory and injunctive relief securing class members' rights to pursue

---

[10] The underlying premise of the Rule 23(b)(2) class is that its members suffer from a common injury properly addressed by common class-wide relief and without regard to variants affecting the measure of individual class members' damages. *See generally Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 414-15 (5th Cir. 1998).

legalization in accord with the settlement. Class members have struggled for 20 years to secure an adjudication of their eligibility for legalization, and although CIS's misleading them into filing superfluous and futile[11] motions to reopen may add insult to injury, legalization remains their overriding interest.

Second, ordering CIS to refund fees to class members who have filed motions to reopen abandoned legalization applications would not involve the Court in sorting out complicated facts to determine individual damages. CIS charges a *uniform* fee of $385.00 to file a motion to reopen, and aggrieved class members can and should be awarded that amount in restitution.

The Court should accordingly order CIS to make restitution to class members it has inveigled into filing superfluous motions to reopen.

III   CLASS MEMBERS ARE ENTITLED TO THE BENEFITS OF SETTLEMENT NOTWITHSTANDING THAT THEY MAY NOW LIVE ABROAD.

The Court should also disapprove defendants' policy and practice of rejecting the legalization applications of class members who—whether voluntarily or involuntarily—now live abroad.

Nothing in the class definition denies the benefits of the settlement to class members merely because they no longer reside in the United States.

Further, the fundamental purpose of the settlements is to restore class members to the position they would now be in but for the INS's unlawful acts of

---

[11] The evidence shows that class members' moving to reopen their abandoned legalization applications is nearly always futile. Of the many cases in which class members are known to have filed such motions, CIS has actually reopened none. *See, e.g.*, Exhibit 12.

Class members who hand over $385 to CIS typically receive, several months later, terse and unreasoned denials of their motions that add little or nothing to the agency's original notice declaring their applications abandoned.

- 21 -

1987-88. Obviously, many such individuals would long ago have become lawful residents but for the INS's having unlawfully blocked them from perfecting legalization applications during the 1987-88 application year. They should not be denied the benefits of the settlement because they chose not to reside here for some 20 years in an undocumented status, or because defendants expelled them from the United States.

### A    Defendants' deeming class members living abroad ineligible for legalization is nowhere supported by the text of the settlement and should accordingly be enjoined.

Again, the starting point is the text of the settlement itself. *Kennewick Irrigation District, supra,* 880 F.2d at 1032. And here again, nothing in the text of the settlement supports defendants' view that continuing presence in the United States is a requirement of class membership.

To the contrary, the settlement fixes the requirements of class membership in unambiguous terms:

> The following subclasses are entitled to relief pursuant to this Settlement Agreement:
>
> > (A)  All persons who were otherwise *prima facie* eligible for legalization under § 245A of the INA, and who tendered completed applications for legalization under § 245A of the INA and fees to an INS officer or agent acting on behalf of the INS, including a QDE, during the period from May 5, 1987 to May 4, 1988, and whose applications were rejected for filing because an INS officer or QDE concluded that they had traveled outside the United States after November 6, 1986 without advance parole.
>
> > ...

Settlement ¶ 1.

Nowhere is there any suggestion in this definition—or anywhere else in the settlement, for that matter—that individuals must now be present in the United

States in order to qualify as class members. Rather, the *sine qua non* of class membership is *prima facie* eligibility for legalization, which requires at most some showing of residence here *only until the date the class member presented the INS with a legalization application during the 1987-88 application year*.

The fundamental "residence" and "presence" requirement of legalization are, of course, that the applicant have resided continuously in the United States—but for brief, casual, and innocent absences—from sometime prior to January 1, 1982, *until the date he or she applies* for legalization. 8 U.S.C. ꟸ 1255a(a)(2) (required period of unlawful residence ends upon "filing" of legalization application).

The settlement makes clear that insofar as class members are concerned, the statutory period of unlawful residency ends on the date they presented legalization applications to an INS agent during the 1987-88 application year, but were turned away. Settlement ¶ 11 ("For purposes of establishing residence and presence in 8 C.F.R. § 245a.2(b), the term "until the date of filing" shall mean until the date the alien was "front-desked" or "discouraged from filing"...").

This provision reflects and is wholly consistent with the Supreme Court's holding that class members who tendered complete legalization applications to the INS during the 1987-88 application year "applied" for legalization then and there, *notwithstanding the agency's refusing to accept them*:

> [W]e note that, by definition, each CSS and LULAC class member who was front-desked presented at an INS office to an INS employee an application that under the terms of the Reform Act (as opposed to the terms of the invalid regulation) entitled him to an adjustment of status. Under any reasonable interpretation of the word, such an individual "applied" for an adjustment of status within the 12-month period under § 1255a(a)(1)(A).

*Reno v. Catholic Social Servs.*, 509 U.S. 43, 67 n.29 (1993) .

It is clear, then, that in order to qualify for legalization—and, *a fortiori*, establish residence and presence sufficient to bring them within the class

definition—class members need not have continued to reside in the United States. Essentially, defendants seek to *add* a qualification for class membership beyond what the class definition itself prescribes.

The test for such additions is exacting: Except under narrowly limited circumstances, courts will not add terms to an agreement. *See Stockton Dry Goods v. Girsh*, 36 Cal.2d 677, 227 P.2d 1 (1951). Additional terms may be implied only if all the following conditions are satisfied:

(1)   the implied term must arise from the language of the contract itself or it must be indispensable to effectuate the intention of the parties;

(2)   it must appear from the language used that the term was so clearly within the contemplation of the parties that they deemed it unnecessary to express it;

(3)   the additional term must be justified on the grounds of legal necessity;

(4)   it must appear that the additional term would have been included had attention been called to it; and

(5)   the additional term may not treat a subject completely covered by the contract.

*Id.*, 36 Cal.2d at 680; *see also Hinckley v. Bectel Corp.*, 41 Cal.App.3d 206, 211, 116 Cal.Rptr. 33 (1974); *Walnut Creek Pipe Distrib., Inc. v. Gates Rubber Co. Sales Div.*, 228 Cal.App.2d 810, 816, 39 Cal.Rptr. 767 (1964) (courts should not supply additional terms, except in cases of "obvious necessity.").

Defendants' added term meets none of these requirements. As has been seen, the text of the settlement implies no requirement that class members continue to live in the United States beyond the period of continuous unlawful residency required for legalization itself. *See* Settlement ¶ 1 (requiring only *prima facie* eligibility for legalization as condition of class membership).

Nor is it necessary to imply such a requirement to effectuate the intention of the parties. The aim of the settlement is to offer persons wrongfully excluded from

- 24 -

1

2  the legalization program in 1987-88 an opportunity to receive an adjudication of

3  their eligibility for legalization now. Implying a residency requirement beyond that

4  required by 8 U.S.C. § 1255a would undercut the settlement's manifest purpose to

5  restore class members to the position they would now be in had the INS accepted

6  adjudicated their legalization applications in 1987-88.

7         Next, current U.S. residence is nowise so clearly the parties' understanding

8  that they need not have said anything about it. Indeed, there is no evidence

9  whatsoever that the parties ever contemplated that CIS would impose such a

10  requirement. Again, had the INS received and adjudicated class members'

11  applications in 1987-88, they would have had to demonstrate no more than seven

12  years' residence in the United States to qualify for legalization. Under CIS's view,

13  the required period of residence balloons to some 28 years— a fourfold increase

14  over what Congress prescribed. Nowhere does the settlement imply any intent to

15  restrict class members' eligibility for legalization so radically. If anything, the

16  settlement requires that class members' legalization applications be adjudicated

17  with even greater liberality than was the practice during the 1987-88 application

18  year. *See, e.g.*, Settlement ¶ 11 ("In evaluating the sufficiency of applicant's proof

19  of residence, Defendants shall take into account the passage of time and attendant

20  difficulties in obtaining corroborative documentation of unlawful residence.").

21         Condoning CIS's distended residence requirement would improperly bring

22  the settlement into conflict with § 1255a. And it would do so needlessly: nothing in

23  the text, structure or underlying intent of the settlement supports CIS's position;

24  they instead fatally undercut it.

25       **B    8 U.S.C. § 1255a(a)(3)(C) nowise justifies CIS's rejecting**

26  **legalization applications tendered by class members now**

27  **living abroad.**

28  Defending its "no applicants from abroad" policy before Special Master

- 25 -

Killefer, CIS argued that its accepting legalization applications from such class members would run afoul of 8 U.S.C. § 1255a(a)(3)(C). Exhibit 26.1. The special master rightly rejected this contention.[12]

Section 1255a(a)(3)(C) provides: "Nothing in this section shall be construed as authorizing an alien to apply for admission to, or to be admitted to, the United States in order to apply for adjustment of status under this subsection." Special Master Killefer rejected this argument, and this Court should as well.

It is apparent that § 1255a(a)(3)(C) does *not* state an *eligibility requirement* for legalization at all, but instead addresses an entirely distinct matter: *admission to the United States*. Thus, class members remain eligible for legalization even though § 1255a(a)(3)(C) bars them from entering the United States (until and unless legalization is granted). *Gutierrez v. Ilchert*, 702 F. Supp. 787, 792 & n.5 (N.D. Cal. 1988) (§ 1255a(a)(3)(C) "a statute that limits admission"; alien detained upon

_____

[12] Special Master Killefer reasoned as follows:

> Here, Mr. de la Cruz-Reynaga is not seeking admission to the United States. Instead, he asks that USCIS determine whether his is eligible for legalization. If USCIS granted Mr. de la Cruz-Reynaga legalization, then nothing would bar him from re-entering the United States as a temporary resident.
>
> ....
>
> The Special Master finds that section 1255a(a)(3)(C) does not preclude Mr. de la Cruz-Reynaga from asking for a determination as to whether he is eligible for legalization. The purpose of the Settlement Agreements is to place class members close to the position they would be in now had the INS accepted and adjudicated their legalization applications during the 1987-1988 IRCA application year.

Exhibit 27 at 3.

Despite this ruling, CIS persists in rejecting legalization applications from class members residing abroad.

1

2    attempt to reenter remains eligible for legalization).

3         Section 1255a(a)(3)(C), then, nowise supports defendants' position that CIS

4    need not accept or adjudicate legalization applications from class members who are

5    outside the United States. Such class members are not seeking admission to the

6    United States: they are simply asking that CIS determine whether they are eligible

7    for legalization. Section 1255a(a)(3)(C) presents no obstacle to their doing so. If

8    and when CIS grants such individuals legalization, nothing would then bar them

9    from re-entering the United States as lawful residents.[13]

10        This Court should restrain defendants from further violations of the

11   settlement and require CIS to identify and make whole all class members against

12   whom they have applied their unlawful requirement.

13   / / /

14

15

16

17

18

19

20

21

22

23

24

25

26

27   [13] Nor is there any practical reason class members could not be processed for

28   legalization from abroad. CIS has officers at many consulates around the world who
     could interview class members, just as they interview applicants for other
     immigration benefits.

IV    CONCLUSION

     For the foregoing reasons, the Court should grant this motion to enforce and issue relief in the form of the order lodged concurrently herewith.[14]

Dated:  October 12, 2009.

CENTER FOR HUMAN RIGHTS AND
CONSTITUTIONAL LAW
Carlos R. Holguín
Peter A. Schey

GIBBS, HOUSTON & PAUW
Robert H. Gibbs
Robert Pauw
(*Pro Hac Vice*)

ASIAN LAW CAUCUS
Ivy Lee


/s/_____
 Carlos Holguín

*Attorneys for plaintiffs*

/ / /

_____

[14] As appears in the proposed order, plaintiffs request the Court required CIS to identify and make whole class members whose legalization applications it has rejected or denied as abandoned or because the class member now resides abroad.

Should the Court have reservations regarding the factual basis for issuing the requested relief, plaintiffs request an opportunity to conduct limited discovery and to supplement the record on this motion prior to disposition. Plaintiffs have lodged herewith a proposed set of requests for admissions, requests for production of documents, and interrogatories, which they request leave to propound should this prove the case. Exhibit 34.

1

2                                  CERTIFICATE OF SERVICE

3          I, Maribel Angulo, hereby certify that on this 12th day of October, 2009, I

4   served a copy of the foregoing documents on counsel for defendants via first class

5   mail addressed as follows:

6                  Anthony Norwood, Esq.

7                  Office of Immigration Litigation
                   Room 7022S
8                  National Place Building,

9                  Washington, D.C. 20530

10

11                                             /s/ _____

12

13   / / /

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28