UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CATHOLIC SOCIAL SERVICES,
INC., - IMMIGRATION PROGRAM,
et al.,

        NO. CIV.S-86-1343 LKK/JFM

    Plaintiffs,

  v.                          O R D E R

MICHAEL CHERTOFF, SECRETARY
U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.,

    Defendants.
_____/

    In January 2004, the court approved a class settlement in this case. The class action addressed regulations implementing the legalization program for undocumented immigrants under the Immigration Reform and Control Act, 8 U.S.C. 1255a. Plaintiffs move to enforce the class action settlement on the theory that defendants are engaging in a pattern and practice of refusing to implement the relief set forth in the settlement agreement.

////

////

1

**I. BACKGROUND**

On November 12, 1986, plaintiffs filed a class action complaint challenging regulations promulgated by the Immigration and Nationalization Service (INS) to implement the 1986 amnesty program for undocumented immigrants. After protracted litigation, including numerous appeals to the Supreme Court and the Ninth Circuit, the parties reached a settlement and on December 1, 2003, they filed a joint motion to approve it. On January 23, 2004, this court issued an order approving the settlement.

The settlement defined the plaintiff class entitled to relief as:

> A. All persons who were otherwise prima facie eligible for legalization under section 245A of the INA and who tendered completed applications for legalization under section 245A of the INA and fees to an INS officer or agent acting on behalf of the INS, including a QDE, during the period from May 5, 1987 to May 4, 1988, and whose applications were rejected for filing because an INS officer or QDE concluded that they had traveled outside the United States after November 6, 1986 without advance parole.
>
> B. All persons who filed for class membership under <u>Catholic Social Services, Inc. v. Reno</u>, CIV No. S-86-1343 LKK (E.D. Cal.), and who were otherwise prima facie eligible for legalization under Section 245A of the INA, who, because and INS officer or QDE concluded that they had traveled outside the United States after November 6, 1986 without advance parole were informed that they were ineligible for legalization, or were refused by the INS or its QDEs legalization forms, and for whom such information, or inability to obtain the required application forms, was a substantial cause of their failure to timely file or complete a written application.

Joint Motion to Approve Settlement of Class Action, Dec. 1,

2

2003, Ex. 1 ("Settlement Agreement") at ¶ 1. The settlement set forth a process for determination of whether an individual was a member of the plaintiff class. The individual is to submit an application for class membership and an application for status as a temporary resident, with supporting documentation, to the defendants. Id. at ¶ 4. The defendants are to grant class membership applications where "it appears more probable than not that the applicant meets the class definition." Id. at ¶ 6. Prior to denying an application, the defendants must forward to the applicant or his or her representative "a notice of intended denial explaining the perceived deficiency in" the application. Id. at ¶ 7. The applicant then has thirty days to submit additional evidence or otherwise remedy the deficiency. Id.

If, after this, the application is denied, the defendants must send a copy of the notice of denial to the applicant, his or her attorney, and class counsel. Id. at ¶ 8. Defendants must inform the applicant of his or her right to appeal the denial to a special master. Id. at ¶¶ 8-9. The applicant may also appeal the decision of the special master to this court. November 12, 2008 Order, Doc. No. 667.

If, however, the application is granted, defendants must adjudicate the class member's application for temporary residence as if it were timely filed between May 5, 1987 and May 4, 1988. Settlement Agreement at ¶ 11.

Plaintiffs raise two separate concerns with defendants' compliance with the settlement agreement. First, plaintiffs

3

contend that defendants are engaging in a pattern and practice of applying a regulation that was enacted in 1991 to class members' applications for temporary residence. Defendants do not contest that they are applying this regulation. Specifically, defendants have applied and continue to apply a so-called "abandonment" regulation where applicants fail to provide supplemental evidence after requested to do so by the government. After a class member's application is terminated under the abandonment regulation, her only option is to file a motion to reopen along with the required fee. Plaintiffs argue that defendants may not apply this regulation to class members' applications pursuant to the settlement agreement.

Second, plaintiffs argue that defendants have engaged in a pattern and practice of declining to consider applications for class membership by applicants residing abroad. Plaintiffs further contend that defendants have failed to notify these applicants of their right to appeal a decision denying their applications for class membership to a special master.

Plaintiffs seek both retrospective and prospective relief. In particular, they ask the court to order defendants to cease the behavior they allege violates the settlement agreement and to re-adjudicate the allegedly wrongfully decided claims and refund any allegedly wrongfully obtained fees.

## II. STANDARD OF REVIEW

Federal courts may not enforce all settlements entered in cases before them. Rather, federal courts only have jurisdiction

where "the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal – either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994). "[M]ere awareness and approval [by a federal judge] of the terms of a settlement agreement do not suffice to make them part of" the judge's order. Id. Instead, the dismissal must expressly reserve[] jurisdiction []or incorporate[] the terms of the settlement agreement." Hagestad v. Tragesser, 49 F.3d 1430, 1433(9th Cir. 1995). If the terms of the settlement agreement are not made part of the order of dismissal, "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." Kokkonen, 511 U.S. at 382.

Here, the settlement agreement specifically retained jurisdiction over two types of claims: (1) "claims by plaintiffs that the Defendants have engaged in a pattern and practice of refusing to implement any of the relief set forth in this Agreement;" and (2) "claims by plaintiffs that the Defendants have expressly repudiated this Agreement." Exhibit One to Joint Motion to Approve Settlement of Class Action ("Settlement Agreement"), Doc. No. 650, at ¶ 18.  This express provision retaining jurisdiction satisfies Kokkonen, and the court therefore has jurisdiction over these two types of claims.

5

Courts view settlement agreements as "contract[s] and [their] enforceability is governed by familiar principles of contract law." <u>Jeff D. v. Andrus</u>, 899 F.2d 753, 759 (9th Cir. 1990). When the United States is a party to a contract entered pursuant to federal law, "federal law controls the interpretation" of the contract. <u>Kennewick Irrigation District v. United States</u>, 880 F.2d 1018, 1032 (9th Cir. 1989). Courts often refer to general principles of contract interpretation when applying federal contract law. <u>Id.</u> Thus, when evaluating plaintiffs' motion, the court will interpret the settlement agreement according to general principles of contract interpretation.

### III. ANALYSIS

**A. Whether USCIS May Apply the Abandonment Regulation to Applications for Class Membership and Legalization**

**i. Requirements of Settlement Agreement**

In 1991, the Immigration and Nationalization Service ("INS"), the predecessor the U.S. Citizenship and Immigration Service ("USCIS"), among other agencies, implemented an "abandonment regulation," 8 C.F.R. § 103.2(b)(13)(i) (2009), for applications to change immigrant status. The relevant section of this regulation states that, "If the petitioner or applicant fails to respond to a request for evidence or to a notice of intent to deny by the required date, the application or petition may be summarily denied as abandoned, denied based on the record, or denied for both reasons." <u>Id.</u> "A denial due to

abandonment may not be appealed, but an applicant or petitioner may file a motion to reopen under § 103.5" Id. at § 103.2(b)(15). Currently, USCIS charges a $585.00 filing fee[1] to file such a motion. 8 C.F.R. § 103.7(b)(1).

Plaintiffs have presented evidence that USCIS has applied the abandonment regulation to the legalization applications of some class members.  These class members are instructed by USCIS that they may reopen their applications by filing the § 103.5 motion along with a filing fee. Defendants admit that, "In some instances USCIS applied the 1991 abandonment and reopening regulation[s to class member applications], which permits the agency to deny an application as abandoned, from which there is no administrative appeal, although there is the right to move to reopen to establish the application was not abandoned." Opposition at 2. This admission along with plaintiffs' anecdotal evidence demonstrates that defendants have engaged in a pattern and practice of applying the abandonment and reopening regulations to the legalization applications of plaintiffs.

Plaintiffs contend that this practice constitutes a refusal to implement the relief set forth in the settlement agreement, thereby entitling the court to jurisdiction over the claim. Specifically, plaintiffs argue that application of a 1991 regulation to class members' seeking legalization violates the express relief set forth in the settlement agreement.

---

[1] In their brief, plaintiffs indicate that the fee is $385.00. Motion at 18. The current regulations list a fee of $585.00.

7

The settlement agreement provides that, "The Defendants shall adjudicate each application for temporary residence filed on Form I-687 in accordance with the provisions of section 245A of the Immigration and Nationality Act, 8 U.S.C. § 1255a, regulations, and administrative and judicial precedents the INS followed in adjudicating I-687 applications timely filed during the [Immigration and Reform Act of 1986 ("IRCA")] application period." Settlement Agreement at ¶ 11. The IRCA application period began on May 5, 1987 and ended on May 4, 1988 ("1987-1988 application period"). Reno v. Catholic Social Servs., 509 U.S. 43, 46 (1993) (citing 8 U.S.C. § 1255a(a)(1)). Plaintiffs argue that application of the 1991 regulation violates the settlement agreement in that the agreement requires the defendants to adjudicate class member applications in accordance with regulations followed for applications filed during the 1987-1988 application period. Because the 1991 regulation was not in effect during this period, plaintiffs argue, defendants cannot use the regulation in adjudicating class member applications.

Defendants argue that the settlement agreement is "silent as to how USCIS should treat an application for class membership or subsequent application for legalization when the application is abandoned by the applicant." Opposition at 2. Consequently, defendants argue, "It is not unreasonable for current USCIS officers to look to the current regulations when the Settlement Agreement is silent on how to adjudicate abandoned applications . . . ." Id. Defendants, however, are mistaken that the

8

settlement agreement is silent.  The settlement agreement expressly requires that defendants may only use regulations in effect while applications filed during the 1987-1988 application period were adjudicated when adjudicating class member applications. Defendants do not address in any manner how utilization of the 1991 regulation complies with the requirements of paragraph 11 of the settlement agreement nor can the court envision any reasonable interpretation of paragraph 11 that would allow defendants to apply a regulation not in effect during the 1987-1988 period.[2] Where "the language [of a contract] is clear and unambiguous, the court will enforce the contract as written and may not create ambiguity where none exists." Conrad v. Ace Property & Cas. Ins. Co., 532 F.3d 1000, 1005 (9th Cir. 2008)(internal citation omitted). Thus, defendants have engaged in a practice of refusing to implement the relief set forth in the settlement agreement.[3]

What is the proper relief is apparent.  Defendants must adjudicate class members' applications as if they applied during the 1987-1988 application period. The question of how these

---

[2] At oral argument, defendants contended that they do not know how abandoned applications were handled during the relevant period. Whatever else is true, such lack of information does not justify use of a prohibited regulation.

[3] Plaintiffs also raise additional arguments in support of its argument that the application of the abandonment regulation to class member's applications is wrongful. However, because the court finds the plain language of the settlement agreement dispositive, it does not address these arguments. Further, defendants raise numerous arguments that are not relevant to the interpretation of the terms of the settlement agreement. Similarly, the court does not address these arguments.

9

applicants are to be treated subsequent to abrogation of the abandonment regulation is not presently before the court. Plaintiff provides no information relative to practice in the relevant period, and defendants' showing is less than fully persuasive.  If the parties are unable to resolve the issue, further litigation will be required.

**B.   Whether USCIS Must Consider Applications of Class Members Living Abroad**

Plaintiffs have similarly presented anecdotal evidence that USCIS has declined to adjudicate applications for class membership from individuals who are living abroad. In essence, plaintiffs argue that because the settlement agreement does not distinguish between applicants currently living abroad and applicants currently living in the United States, to the extent that defendants decline to provide relief to applicants living abroad, they are engaging in a pattern and practice of violating the settlement agreement. Defendants oppose plaintiffs' claim because they contend this court's order approving the settlement precludes the claim.

Plaintiffs have only provided two examples of this alleged conduct. In the first, a foreign applicant, Mario de la Cruz, attempted to apply for class membership. USCIS rejected his application, and expressed that "[t]here is no appeal to this decision." Despite USCIS's statement, de la Cruz was able to appeal to the special master, who decided he was entitled to relief under the settlement agreement. Plaintiffs' Exhibit 25.

10

Plaintiffs' other example concerns an applicant, Stanley Samaratunga, who was abroad at the time USCIS sought to schedule his interview. USCIS administratively closed his claim. Plaintiffs' Exhibit 28. The notice contained the same language indicating that he could not appeal the decision. Plaintiffs make no indication as to whether this applicant was able to appeal the decision to the special master.

### i. Court Order Approving Settlement of Class Action

In their opposition, defendants rely heavily upon this court's January 23, 2004 order approving the settlement. Defendants argue that "the Court has already held that Defendants' interpretation does not violate the Settlement Agreement." While the order does provide significant guidance for plaintiffs' current motion, it does not reach as far as defendants imply. Specifically, the order did not specify that Defendants are correct to decline adjudication of applications from individuals who are abroad. Rather, the court decided that it need not determine in approving the settlement whether individuals residing abroad may apply for class membership. In particular, the court found it "unnecessary to resolve this disagreement." January 23, 2004 Order at 3. The order further noted that, "The settlement itself anticipates such disagreements and establishes procedures for their resolution," citing the sections of the settlement agreement addressing the appeal to the special master and the court's continuing jurisdiction. Id. at 4. Ultimately, this court concluded that

the claims of those who are residing abroad "will be fit for judicial resolution when and if defendants deny them the benefits of the settlement because they are outside the United States." Id. Thus, this court held not that the defendants could decline to adjudicate claims from individuals abroad, but rather that whether such claims must be adjudicated will be determined, if necessary, through the appellate procedure envisioned in the settlement.

### ii. Ripeness of Claims

As described above, this court held that it would only resolve the ripe claims of applicants residing abroad. Furthermore, the court will only resolve these claims after they proceeded through special master review. Specifically, such review would be limited to situations where the special master decided in favor of the government.

Here, plaintiffs have not provided any evidence of ripe claims. Plaintiffs' first applicant, de la Cruz, was an individual whose application USCIS initially declined to adjudicate. However, he was nonetheless able to appeal the decision to the special master, where the special master resolved the appeal in his favor. Similarly, plaintiffs have not provided any information to support a claim that the second applicant plaintiffs identified, Samaratunga, does not have access to judicial review of his application.[4] As such, the

---

[4] It seems likely to the court that Samaratunga appealed the decision to a special master as the exhibits provided by plaintiffs indicate that he is represented by class counsel.

12

claim of the second applicant is also not ripe. Accordingly, plaintiffs have not identified any claims ripe for judicial review. As such, the court cannot decide at this time whether applications of individuals living abroad should be adjudicated by USCIS.

Nonetheless, plaintiffs have identified a pattern and practice of failure to comply with the terms of the settlement. Specifically, the settlement agreement states,

> The Defendants shall send a written notice of the decision to deny an application for class membership to the applicant and his or her attorney of record, with a copy to Class Counsel. The notice shall explain the reason for denial of the application, and notify the applicant of his or her right to seek review of such denial by a Special Master . . . .

Settlement at ¶ 8. Plaintiffs have provided two notices of decision from USCIS declining to consider applications for class membership of individuals residing abroad. Plaintiffs' Exhibits 26; 31. Neither notice notifies the applicant of his or her right to seek review of the denial by a special master. Id. As such, both notices violate the settlement agreement.

Defendants have recognized this failure to conform with the terms of the settlement agreement. Specifically, during oral argument, defendants' counsel informed the court that defendants have identified all individuals who applied for class membership from abroad. Counsel estimated the number of applicants to be 56. Counsel further indicated that defendants are in the process of advising these applicants of their right to appeal to the special master. If defendants are taking such actions,

13

1  plaintiffs' claim for relief is moot. Accordingly, the court
2  orders defendants to submit an affidavit and any other relevant
3  evidence to the court concerning its actions (1) in identifying
4  rejected applicants who were residing abroad and not informed of
5  their right to special master review; and (2) in locating these
6  applicants and informing them of their right to special master
7  review within twenty eight (28) days of the issuance of this
8  order. Plaintiffs may file objections, if any, within fourteen
9  (14) days after service of defendants' affidavit.

### IV. CONCLUSION

For the foregoing reasons, the court orders the following:

(1)  Plaintiffs motion regarding application of the abandonment regulation is GRANTED.

(2)  Defendants shall submit an affidavit and any other relevant evidence to the court concerning its actions (1) in identifying rejected applicants who were residing abroad and not informed of their right to special master review; and (2) in locating these applicants and informing them of their right to special master review within twenty eight (28) days of the issuance of this order.

(3)  Plaintiffs may file objections, if any, within fourteen (14) days after service of defendants' affidavit.

IT IS SO ORDERED.

DATED: December 11, 2009.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

14